[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-16151
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 25, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 02-60772-CV-WPD

BUC INTERNATIONAL CORP., a Florida corporation,

Plaintiff–Counter-Defendant–Appellee,

versus

INTERNATIONAL YACHT COUNCIL LIMITED, a foreign corporation,

Defendant–Appellant,

BARBARA TIERNEY, an individual, et al.,

Defendants,

MLS SOLUTIONS, INC., a Florida corporation,

Defendant–Counter-Claimant–Appellant,

BRADFORD YACHT SALES, INC., a Florida corporation,

Defendant–Counter-Claimant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 25, 2008)

Before ANDERSON and BARKETT, Circuit Judges, and TRAGER[*], District Judge.

BARKETT, Circuit Judge:

MLS Solutions, Inc. and International Yacht Council Ltd. ("IYC") were found by a jury to have violated the Copyright Act, 17 U.S.C. § 501, by infringing upon the selection, order, and arrangement of information contained in BUC International Corp.'s Used Boat Price Guide.[1]  The jury awarded BUC $1,598,278 in actual damages, and we affirmed that judgment.  See BUC Int'l Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129 (11th Cir. 2007).  Pursuant to the one-satisfaction rule, MLS and IYC moved the district court to reduce the final judgment against them by the settlement amounts that BUC obtained from co-defendants that settled before trial.  The district court declined.  Because we conclude that the one-satisfaction rule does apply to infringement claims under the Copyright Act, we reverse.

BUC filed suit against six defendants: MLS, IYC, William Pazos, the Florida Yacht Brokers Association ("FYBA"), Bradford Yacht Sales, Inc., and Barbara Tierney.  BUC primarily claimed that the six defendants had directly,

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

[1] A third non-settling defendant, William Pazos, was found not liable and is not involved in this appeal.

2

vicariously, and/or contributorily infringed upon its copyright in the selection, order, and arrangement of information contained in BUC's Used Boat Price Guide.[2] BUC's guide contained a centralized directory of recreational boat and yacht listings that potential buyers could access through a software application called the BUC Marine Sales & Charter Network.[3]

Several weeks before trial, BUC entered into confidential settlement agreements with Bradford, FYBA, and Tierney. The agreement with Bradford was dated February 25, 2004 and required Bradford to pay $290,000 to BUC in exchange for dismissal with prejudice of the lawsuit filed against it. The agreement with FYBA and Tierney was dated March 11, 2004 and required FYBA and Tierney to pay $500,000 in total to BUC through their respective insurance carriers for dismissal with prejudice of the lawsuit filed against them. On March 22, 2004, BUC proceeded to trial against MLS, IYC, and Pazos on its copyright claims, and on April 7, 2004, the jury found MLS and IYC liable for BUC's actual

---

[2] In its Second Amended Complaint, BUC also alleged antitrust violations, unfair and deceptive trade practices under Florida law, and breach of contract. The district court dismissed the antitrust claims, and it granted summary judgment in the defendants' favor on the claims for injunctive relief contained in Count IV. A footnote in the district court's order of March 16, 2004 states that "due to the Court's ruling on the antitrust counts, BUC is now foreclosed from arguing that Defendants violated Florida's Deceptive and Unfair Trade Practices Act based on a violation of the antitrust laws." The district court's disposition of these claims is not at issue in this appeal.

[3] The facts of this case are recited at greater length in the related appeal. See BUC Int'l Corp., 489 F.3d at 1133–37.

damages of $1,598,278 or, alternatively, its statutory damages of $1,098,000.

MLS and IYC elected to recover actual damages, and the district court entered

final judgment in that amount on April 15, 2004.

Pursuant to the confidential settlement agreements, BUC and the settling

defendants filed their notices of dismissal on April 12, 2004 and May 7, 2004. The

district court dismissed the settling defendants on May 10, 2004. On June 30,

2004, MLS filed a motion to stay execution of the final judgment, which was later

denied. The penultimate paragraph of the motion, however, stated that MLS

intended to file a motion pursuant to Federal Rule of Civil Procedure 60(b) to

reduce the damages award by that amount already satisfied by the confidential

settlements. The paragraph further stated MLS's belief that the confidential

settlement amounts totaled between $600,000 and $800,000. MLS and IYC

ultimately filed their Rule 60(b) motions for relief from the judgment on

November 8, 2004 and December 1, 2004, respectively. The district court denied

both motions on September 30, 2005, and MLS and IYC now appeal.

## DISCUSSION

Although MLS and IYC originally moved the district court for partial relief

from the judgment against them pursuant to several provisions of Federal Rule of

Civil Procedure 60(b), they appeal from the denial of their challenges under only

subsections (5) and (6).  In part, Rule 60(b)(5) allows a court to relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged."  Rule 60(b)(6) allows the same remedy for "any other reason that justifies relief."  Other courts have found Rule 60(b)(5) to be an appropriate vehicle through which to seek credit against all or part of a judgment for the amount paid by a settling co-defendant.  See Torres-Troche v. Municipality of Yauco, 873 F.2d 499, 501 & n.7 (1st Cir. 1989); Kassman v. Am. Univ., 546 F.2d 1029, 1033 (D.C. Cir. 1976) (noting that "a motion for a credit on a judgment should be treated as a Rule 60(b)(5) motion for relief from a judgment which has been satisfied, released or discharged"); Sunderland v. City of Philadelphia, 575 F.2d 1089, 1090–91 (3d Cir. 1978).  We agree that motions seeking credit for settlement amounts obtained against joint tortfeasors are appropriately brought under Rule 60(b)(5).[4]

We review the district court's denial of relief under Rule 60(b) for an abuse of discretion, Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003), bearing in mind that "[a]n error of law constitutes an abuse of discretion."  Wexler v. Lepore, 385 F.3d 1336, 1338 (11th Cir. 2004).  Before reaching the merits, however, we address BUC's claim that MLS's and IYC's Rule

---

[4] Rule 60(b)(6) "applies only to cases that do not fall into any of the other categories listed in parts (1)–(5) of Rule 60(b)."  United States v. Real Prop. & Residence Located at Route 1, Box 111, Firetower Rd., Semmes, Mobile County, Ala., 920 F.2d 788, 791 (11th Cir. 1991).  Thus, we need not consider that portion of MLS and IYC's appeal.

60(b)(5) challenges were untimely.

*A. Whether MLS and IYC filed their*
*Rule 60(b) motions within a reasonable time*

Motions filed pursuant to Rule 60(b)(4)–(6) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). BUC argues that MLS and IYC delayed in filing their Rule 60(b) motions and that we should therefore decline to consider the arguments raised in those motions now.

Although the Eleventh Circuit has not yet given substance to this limitation in the context of Rule 60(b)(5), we agree with most courts that we must consider the circumstances of each case to determine "whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (1st Cir. 1990); see also In re Pac. Far E. Airlines, Inc., 889 F.2d 242, 249 (9th Cir. 1989); Planet Corp. v. Sullivan, 702 F.2d 123, 126 (7th Cir. 1983) (considering, among other related factors, prejudice and the reason given for the delay); Harduvel v. Gen. Dynamics Corp., 801 F. Supp. 597, 603 (M.D. Fla. 1992).

The earliest date that MLS and IYC could have become aware of a potential settlement between BUC and the settling defendants was March 19, 2004, when all counsel, except counsel for the settling defendants, appeared before the district court before the first day of trial, which was scheduled for March 22, 2004. The

6

settlements were confidential, however, so MLS and IYC still did not know their terms, including whether they involved any payments and, if so, the amounts of those payments. At the latest, MLS and IYC learned of the settlements on April 12, 2004 and May 7, 2004, when BUC and the settling defendants filed notices of dismissal. Even then, the terms remained confidential. MLS and IYC informally attempted to discover the settlement amounts by requesting, in letters dated June 25, 2004 and July 2, 2004, that BUC and the settling defendants waive the confidentiality provisions of the agreements. The settling defendants agreed, but BUC refused, asserting that MLS and IYC had waived any claim to credit for the settlement amounts. During that same period of time, on June 30, 2004, MLS filed a motion to stay execution of the judgment, alluding to its intention to file shortly thereafter a Rule 60(b) motion claiming credit for the settlement amounts.

On July 28, 2004, MLS initiated proceedings in bankruptcy court and served BUC, apparently on October 27, 2004, with a request to produce the confidential settlement agreements. BUC initially refused but ultimately complied on November 9, 2004 when the bankruptcy court denied its motion for a protective order. By that time, IYC had moved the district court, as part of its Rule 60(b) motion of November 8, 2004, to compel BUC to disclose the terms of the settlement agreements. On December 1, 2004, MLS filed its Rule 60(b) motion.

7

We find that the delay in this case was not unreasonable in light of the difficulty that MLS and IYC encountered in attempting to discover the terms of the confidential settlement agreements. Although MLS and IYC waited approximately six and seven months, respectively, from the date of the second notice of dismissal to file their motions, MLS did notify the district court of its intention to do so within two months of the second notice of dismissal, and both MLS and IYC attempted to ascertain the terms of the settlements in the interim. Furthermore, BUC does not allege any prejudice in its briefing, and we see none. We therefore reject BUC's challenge to the timeliness of the Rule 60(b) motions and proceed to the merits.

### B. Whether the one-satisfaction rule applies to infringement claims

MLS and IYC argue on appeal that they are entitled to credit against the $1,598,278 award against them for the settlement amounts—which total $790,000—paid by the settling defendants. MLS and IYC predicate their request on the one-satisfaction rule, which has its roots in elementary principles of tort law. See Kassman, 546 F.2d at 1033–34. The rule generally provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors. See W. Page Keeton, Prosser & Keeton on

8

the Law of Torts §§ 48–49, at 330–32, 335–36 (5th ed. 1984); McDermott, Inc. v.

AmClyde, 511 U.S. 202, 219 (1994).

In rejecting the request, the district court likened the attempt to claim credit

for the settlements to a claim for contribution, which would only exist under the

Copyright Act if either Congress created such a right, expressly or implicitly, or

the courts created such a right as a matter of federal common law. See Nw.

Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 90–91

(1981); Lehman Bros., Inc. v. Wu, 294 F. Supp. 2d 504, 504–05 (S.D.N.Y. 2003).

The district court determined that no right to contribution existed under the

Copyright Act or as a matter of federal common law. BUC advances several

alternative arguments on appeal,[5] but essentially urges that we adopt the district

---

[5] BUC first claims that MLS and IYC are in fact claiming a "setoff," and that they waived the claim because a setoff is an affirmative defense that must be raised prior to trial. According to Black's Law Dictionary, a setoff is a "counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim." Black's Law Dictionary 1404 (8th ed. 2004); see, e.g., Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1262 (11th Cir. 1999) ("Having determined that AFF was entitled to recover on its complaint, we turn to the question of whether Lake Forest is entitled to a set-off resulting from any viable affirmative defense."). The one-satisfaction rule, however, is not invoked as a counterdemand, but rather as an equitable doctrine designed to prevent multiple recoveries by a plaintiff on its own claim and for a single injury. See Rose v. Associated Anesthesiologists, 501 F.2d 806, 809 (D.C. Cir. 1974). Furthermore, given that MLS and IYC learned of the terms of the settlement agreements well after trial, it cannot be that they waived their claims by failing to act prior to trial.

BUC also argues that its settlement agreements with Bradford, FYBA, and Tierney did not release MLS and IYC from liability. The district court agreed with this argument, and MLS and IYC do not challenge that ruling on appeal. Rather, they claim that the settlement amounts partially satisfied the damages awarded for the same injury.

Finally, BUC argues that we should not accord relief under Rule 60(b)(6). We agree based upon our previous finding that Rule 60(b)(5) is the appropriate vehicle for the relief that

court's approach. For the reasons that follow, we disagree that the one-satisfaction

rule is akin to a claim for contribution under the Copyright Act, and reverse.

MLS and IYC are not seeking contribution by invoking the one-satisfaction

rule. A right of "contribution" allows a defendant "to demand that another who is

jointly responsible for a third party's injury supply part of what is required to

compensate the third party." Black's Law Dictionary 352–53 (8th ed. 2004). It

"reflects the view that when two or more persons share responsibility for a wrong,

it is inequitable to require one to pay the entire cost of reparation." Nw. Airlines,

451 U.S. at 88. The one-satisfaction rule, by contrast, operates to prevent double

recovery, or the overcompensation of a plaintiff for a single injury.[6] Rose, 501

F.2d at 809. Although similar, the theories do not always overlap. For example,

the one-satisfaction rule has been applied even where a right to contribution does

not lie. In Snowden v. D.C. Transit System, Inc., a settling defendant was found

---

MLS and IYC seek.

[6] It is worth noting that in AmClyde, an admiralty case, the Supreme Court considered whether to employ a dollar-for-dollar reduction or a proportionate-share reduction in crediting settlement amounts against a judgment awarded against non-settling co-defendants. 511 U.S. at 204. The Court found that policy interests favored the proportionate-share rule. Id. at 217. In so doing, it noted that the proportionate-share rule's potential to "overcompensate" a plaintiff did not offend the one-satisfaction rule, in part because "[t]he law contains no rigid rule against overcompensation." Id. at 218–20. We understand the one-satisfaction rule to encompass several methods of crediting settlements against judgments, including the proportionate-share approach, and thus do not see the Supreme Court's holding in AmClyde as problematic for our purposes. It simply recognizes that proportionate-share reduction does not frustrate the equitable interest in preventing overcompensation, as the overcompensation would be limited and would only occur in the event that a settling defendant makes "an unwise settlement." Id. at 219–20.

10

not liable during the trial against the non-settling co-defendant. 454 F.2d 1047, 1047–48 (D.C. Cir. 1971). The non-settling defendant sought a reduction in the judgment against it by the amount of the settlement, and the plaintiff argued that credit for the settlement was inappropriate given the exoneration of the settling defendant at trial. Id. at 1048–49. The D.C. Circuit disagreed, noting that the "flaw in [the plaintiff's] argument is her failure to distinguish between the concepts of credit and contribution." Id. at 1049. The one-satisfaction rule operates against plaintiffs and requires nothing of joint tortfeasors, whereas the right to contribution requires actual, and not just potential, joint tortfeasors to share liability. Id.

It is therefore simply not the case that the Supreme Court's decision in Northwest Airlines, which dealt with the existence of an independent cause of action for contribution, implicates the common-law limitation of a plaintiff's ability to recover multiple times for a single injury. The motivating force of the Northwest Airlines decision was an unwillingness of the Court to imply a private cause of action "through the exercise of judicial power to fashion appropriate remedies for unlawful conduct." Nw. Airlines, 451 U.S. at 90–91. The concerns expressly associated with that unwillingness—principally that of remaining faithful to Congress's intent—do not apply to the equitable application of the one-satisfaction rule. It is not a right created to protect defendants, but to limit

11

plaintiffs.

Having found that Northwest Airlines does not limit our ability to apply the one-satisfaction rule to federal claims, we join the Second Circuit in holding that the rule does indeed apply to infringement actions under the Copyright Act. See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 553–54 (2d Cir. 1972). In Screen Gems, the Second Circuit reviewed an appeal similar to the one before us now. The plaintiffs alleged copyright violations against a number of defendants, three of which settled prior to trial. Id. at 553. After a bench trial, the remaining defendants were found liable for a total amount in excess of the total settlement amounts and sought what MLS and IYC seek here, a reduction in their liability by the amount of the settlements. Id. Noting that "[c]opyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable," and that "[u]nder elementary principles of tort law a plaintiff is entitled to only one recovery for a wrong," the Second Circuit held "that the Copyright Act allows only a single recovery for a single sale; where multiple defendants are all involved with sales, as are the [non-settling] and the settling defendants here, their liability is joint and several and recovering from one reduces the liability of the others." Id. at 554.

We agree. To hold otherwise would allow a plaintiff to recover multiple

12

times for a single injury, frustrating this elementary principle of tort law in a manner that we cannot imagine envisioned by Congress.[7] Thus, MLS and IYC are entitled to a reduction in the judgment against them by the amounts received by BUC in settlement of claims for the same injury.

BUC alternatively argues that even if the one-satisfaction rule applies, it is entitled to a hearing to determine whether the payments made to BUC by the settling defendants were for the same injury addressed by the jury's verdict. Given the district court's disposition, it did not address whether the injuries are the same, thus warranting application of the one-satisfaction rule, or whether a hearing is necessary to determine as much. In other circumstances, we might leave those

---

[7] We note that ample authority supports applying the rule to federal causes of action. Of course, the Second Circuit did so in Screen Gems, and in the context of federal antitrust claims, the Third Circuit adopted a view "consistent with the rule that a settling plaintiff is entitled to only one full recovery." Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 436 (3d Cir. 1993) ("Given the foregoing considerations, we conclude that where a plaintiff executes a general settlement instrument which settles multiple claims with a defendant, but a non-settling defendant is not a party to that agreement, the non-settling defendant need show only that the plaintiff settled a claim on which the non-settling defendant was found liable at trial. If the defendant makes this showing, the burden then shifts to the plaintiff to prove that, under the terms of its agreement with the settling defendant, the settlement or part thereof did not represent damages arising under the same theory of liability as those forming the basis for the jury award."). Other courts have done the same in other federal contexts. See MacKethan v. Burrus, Cootes & Burrus, 545 F.2d 1388, 1389–91 (4th Cir. 1976) (action under the Securities Exchange Act of 1934); Ratner v. Sioux Natural Gas Corp., 719 F.2d 801, 803–04 (5th Cir. 1983) (action under federal and state securities laws; "Texas tort law recognizes a 'one satisfaction' rule . . . . This rule has also been applied to cases arising under the federal securities laws, and therefore governs this appeal."); Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989) (adopting the one-satisfaction rule in the federal securities context after noting that "it has been unclear whether in a 10b-5 cause of action the federal securities laws incorporate the state law of setoff or require a uniform federal rule for setoff").

13

questions to the district court for resolution in the first instance. Here, however, the record reflects that the claims settled by BUC prior to trial are for precisely the same injury accounted for by the jury's verdict and award. The agreements with FYBA, Tierney, and Bradford settled copyright infringement claims that are identical to those against MLS and IYC. The only settled claim that is plausibly unique is that against Bradford contained in Count XIV of the Second Amended Complaint, which alleges breach of contract for Bradford's violation of a license agreement limiting its use of the BUC Marine Sales & Charter Network. That claim alleges, however, that Bradford's violation of the license agreement was in furtherance of the defendants' conspiracy to eliminate BUC from the market, and that the injury is in essence identical to the injury caused by the infringing acts of the other defendants. Thus, remand is unnecessary for this purpose in this case.

We may also decide, without remand, which version of the one-satisfaction rule to apply. Although some courts refer exclusively to dollar-for-dollar, or pro tanto, reductions when referring to the one-satisfaction rule, others consider reductions by the proportionate share of the settling defendants' liability. MLS and IYC request a dollar-for-dollar reduction, and BUC does not argue for a proportionate-share approach. Thus, we direct the district court to reduce the judgment against MLS and IYC dollar-for-dollar by the amounts received by BUC

in settlement of its claims against FYBA, Tierney, and Bradford.

For the reasons above, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.