[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10901

_____

RICHARD E. WARNER,
as Co-Personal Representatives of the
Estate of Joseph Ardolino II,
JOHN W. PARENTE,
as Co-Personal Representatives of the
Estate of Joseph Ardolino II,
JOSEPH E. ARDOLINO,
individually,

                                        Plaintiffs-Appellants,

*versus*

CITY OF MARATHON,
a political subdivision of the State of Florida,
MICHAEL CINQUE,
individually and as a City of Marathon Official,
RALPH LUCIGNANO,

2                    Opinion of the Court                    24-10901

individually and as a City of Marathon Official,
THE STUFFED PIG, INC.,
a Florida corporation,
CSV, INCORPORATED, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:14-cv-10071-JLK

_____

Before ROSENBAUM, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Plaintiffs, the Estate of Joseph Ardolino II and Joseph Ardolino (Joseph Ardolino II's son), appeal the denial of their motion to reopen their action and amend their complaint against the City of Marathon under the Takings Clause of the Fifth Amendment.

Under our mandate, the district court dismissed Plaintiffs' case without prejudice in 2018. *See Warner v. City of Marathon*, 718 F. App'x 834, 838 (11th Cir. 2017) (per curiam). At the time, the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* dictated that Plaintiffs

could not pursue their takings claim in federal court until they first litigated their case in state court.  473 U.S. 172, 194–95 (1985).

But in 2005, the Supreme Court also decided *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005).  There, the Court held that federal courts "are not free to disregard the full-faith-and-credit statute [28 U.S.C. § 1738] solely to preserve the availability of a federal forum" for takings claims.  *Id.* at 347–48.  So a state court's judgment on a takings claim has "preclusive effect" in later federal suits on that claim.  *See id.* at 347.  In plain English, federal courts can't hear a takings claim if a Plaintiff already lost on that claim in state court.

*Williamson County* and *San Remo*, together, created "[t]he *San Remo* preclusion trap," —a "Catch-22."  *Knick v. Twp. of Scott*, 588 U.S. 180, 184–85 (2019).  A takings plaintiff couldn't "go to federal court without going to state court first; but if he [went] to state court and los[t], his claim [would] be barred in federal court."  *Id.* So the Supreme Court overruled *Williamson County* in its 2019 decision *Knick v. Township of Scott*.  *Id.* at 185, 206.  But it left *San Remo* in place.  *See id.* at 185, 204, 206.

*Knick* issued as the parties litigated their claim in state court. But rather than seek to remove the case back to federal court after *Knick*, Plaintiffs pursued their case fully in state court.  And they lost.  Now, several years later, we are precluded from entertaining their takings claim under 28 U.S.C. § 1738.  So we conclude the district court didn't abuse its discretion when it denied Plaintiffs'

motion to reopen their case and amend their complaint, and we affirm its order.

## I.    BACKGROUND

In August of 2014, Plaintiffs sued the City of Marathon and several co-defendants in Florida state court under multiple causes of action. *See Warner*, 718 F. App'x at 836. The City of Marathon removed the case to federal court. *Id.* Proceeding in federal court, Plaintiffs' operative complaint alleged, as relevant, that through the City's enforcement of zoning regulations, the City violated Plaintiffs' rights under the Takings Clause of the Fifth Amendment and 42 U.S.C. § 1983. *Id.* at 837.

The district court dismissed the complaint with prejudice, and Plaintiffs appealed. *Id.* On December 8, 2017, we affirmed the dismissal of the complaint except as to Plaintiffs' takings claim. *Id.* at 840. As to the takings claim, we vacated the district court's judgment with instructions to dismiss the claim without prejudice for lack of subject-matter jurisdiction. *Id.* at 838. We explained that under *Williamson County*, a federal court couldn't "review the claim until the plaintiffs have been denied relief by a Florida court." *Warner*, 718 F. App'x at 838. On February 5, 2018, the district court dismissed the takings claim without prejudice for lack of subject-matter jurisdiction.[1]

The parties then litigated the takings claim in state court, and the state trial court granted summary judgment to the City of

---

[1] The district court docketed the order the next day, on February 6, 2018.

Marathon on March 25, 2022.  On January 4, 2023, Florida's Third District Court of Appeal affirmed the grant of summary judgment, explaining that "the fact that a regulation causes a diminution in the property value alone does not establish a taking."  *See Warner v. City of Marathon*, 357 So. 3d 188 (Fla. Dist. Ct. App. 2023) (per curiam) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 131 (1978)).  The Florida Supreme Court denied a petition for review on May 18, 2023.  *Warner v. City of Marathon*, No. SC2023-0433, 2023 WL 3521698 (Fla. May 18, 2023).

While Plaintiffs litigated their claim in state court, on June 21, 2019, the Supreme Court overruled *Williamson County* in *Knick*, 588 U.S. at 185, 206.  After *Knick*, no longer must takings plaintiffs first seek relief in state court before filing a claim directly in federal court.  *Id.*  The Supreme Court highlighted that under its decision in *San Remo*, 545 U.S. 323, "a state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit."  *Knick*, 588 U.S. 184.  So paired with *Williamson County*—which required plaintiffs to proceed in state court first—*San Remo* created "a Catch-22" for a takings plaintiff, where he could never receive relief in federal court.  *Id.* at 184.  Recognizing this problem, the Court overruled *Williamson County*'s state-litigation requirement, without disturbing *San Remo*.  *See id.* at 185, 204, 206.

On June 20, 2023, a little over thirty days after the Florida Supreme Court's denial of review in their case, Plaintiffs moved in federal court to reopen their case and amend their complaint.  The

6                    Opinion of the Court                    24-10901

district court denied that motion on December 14, 2023, interpreting the motion to reopen the case to be a motion under Federal Rule of Civil Procedure 60(b).  The court highlighted that "Plaintiffs waited two years after a change in the law was issued by the Supreme Court to seek relief before this Court."  It also noted that "the issues were litigated to finality in state court, where both the trial court and the court of appeals applied federal law when deciding the issues."  So the district court determined "that to reopen the case and allow Plaintiffs to amend would effectively give Plaintiff[s] a second opportunity to have their case tried, which could result in conflicting rulings."  Because the case remained closed, the court denied the motion to amend the complaint as well.

On January 11, 2024, Plaintiffs filed a motion to reconsider the court's December 14, 2023, order.[2]  The district court denied that motion on February 27, 2024.  On March 22, 2024, Plaintiffs filed their notice of appeal on the denial of their motions to reopen their case and amend their complaint and for reconsideration.

## II.    STANDARD OF REVIEW

We review the denial of post-judgment motions under an abuse-of-discretion standard.  *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002).  We find an abuse of discretion if the court made "a clear error of judgment, fail[ed] to follow the proper legal standard or process for making a determination, or relie[d] on clearly erroneous findings of fact."  *Johnston v. Borders*, 36 F.4th

---

[2] Three days later, Plaintiffs amended their motion to correct a factual error.

1254, 1282 (11th Cir. 2022) (per curiam) (internal quotation marks and citation omitted).

## III.    DISCUSSION

Plaintiffs argue the law-of-the-case doctrine demands we allow them to reopen their case. They highlight that in our prior decision in their case, we said a federal takings plaintiff must show "there is no adequate state remedy to obtain just compensation, or an adequate remedy exists but the plaintiff has been denied relief" before seeking relief in federal court. *Warner*, 718 F. App'x at 838. So we could not "review the[ir] claim until the plaintiffs have been denied relief by a Florida court." *Id*. Based on these statements, they contend we held that they could return to their case after having been denied relief in state court.

Plaintiffs also assert that Florida state law provides an inadequate remedy for takings violations, so Plaintiffs must be allowed to pursue a federal remedy. And they argue that *San Remo* does not bar our review of their takings claim because, they claim, 28 U.S.C. § 1738 does not apply to civil-rights suits filed under 42 U.S.C. § 1983.

In its response, the City of Marathon asserts that we lack jurisdiction to hear this appeal because Plaintiffs filed an untimely notice of appeal. They note that Plaintiffs filed a notice of appeal more than 30 days after the denial of their initial motion to reopen the case, and they argue the reconsideration motion does not toll the deadline. Specifically, they contend that the second of two

8                    Opinion of the Court                    24-10901

successive motions of the same type does not toll the deadline to file a notice of appeal, and both motions were Rule 59 or 60 motions.

In response, Plaintiffs seem to argue that their reopening motion was not a motion under Rules 59 and 60, but a "cleanup motion." So they contend the reconsideration motion was their first Rule 59 or 60 motion in the case, which tolls the deadline.

We agree that Plaintiffs' notice of appeal was timely, and we have jurisdiction over this appeal. But we hold 28 U.S.C. § 1738, as *San Remo* construes it, bars Plaintiffs from re-litigating their takings claim in federal court. And Plaintiffs did not file their motion to reopen their case within a reasonable time. So we affirm the denial of their motion to reopen the case. For that reason, we also must affirm the denial of their motion to amend their complaint since the case has not been reopened. We explain below.

### A.  *Plaintiffs' notice of appeal was timely.*

We start, as we must, with the jurisdictional issue. Federal Rule of Appellate Procedure 4(a)(1)(A) provides that, "[i]n a civil case, except as provided in Rule[] . . . 4(a)(4), . . . the notice of appeal . . . must be filed . . . within 30 days after the entry of the . . . order appealed from." "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). So if the notice of appeal was untimely, we can't hear this case.

Plaintiffs appeal the district court's denial, on December 14, 2023, of their motion to reopen their case and amend their

24-10901              Opinion of the Court                    9

complaint.  They filed the notice of appeal on March 22, 2024, over three months later.  So under the default rule, Plaintiffs' notice of appeal would be untimely because they filed it after 30 days passed from the order they appealed.

But Plaintiffs also filed a motion for reconsideration of that order.  And the district court did not dispose of that motion until February 27, 2024.  Plaintiffs did file the notice of appeal within thirty days of that order.  So the question before us is whether the reconsideration motion extended the time to file a notice of appeal challenging the original order.

It did.  The Supreme Court has explained that "[a] timely motion for reconsideration filed within a window to appeal does not toll anything; it 'renders an otherwise final decision of a district court not final' for purposes of appeal."  *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 197 (2019) (quoting *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (per curiam)).  So until the district court disposed of the motion for reconsideration, its decision remained nonfinal. And the thirty-day clock did not start to run.

The parties focus their attention on another part of Rule 4. They both assume that the December 2023 order was final notwithstanding the reconsideration motion, so the reconsideration motion had to *toll* the period to appeal that order.  Based on that thinking, they look to Rule 4(a)(4)(A) to see whether the reconsideration motion did just that.

Rule 4(a)(4)(A) provides that if a party files certain post-judgment motions, including Rule 59 and 60 motions within 28 days of

the entry of the judgment, the 30-day clock doesn't run for all orders in the case until the Court disposes of the last such motion. *See* FED. R. APP. P. 4(a)(4)(A). That's important because "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). So by filing one of the Rule 4(a)(4)(A) motions, a party extends the window to appeal, in its one opportunity, all the issues it preserved in the original judgment. *See* FED. R. APP. P. 4(a)(4)(A).

But we make an exception and allow for later appeals to challenge the resolution of post-judgment motions. "We treat the postjudgment proceeding as a free-standing litigation, in effect treating the final judgment as the first rather than the last order in the case." *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (cleaned up and citation omitted) (per curiam). And "[o]nly if a post-judgment order is apparently the last order to be entered in the action is it final and appealable." *See id.* (internal quotation marks and citation omitted). But it isn't until a reconsideration motion is resolved. *See Nutraceutical Corp.*, 586 U.S. at 197.

Once that post-judgment order is final, the litigant may bring a second appeal in the case to challenge the order. They can do so long after the window to appeal the original judgment closed. *See, e.g., Waetzig v. Haliburton Energy Servs.*, 604 U.S. —, 145 S. Ct. 690, 694–95 (2025) (reviewing on appeal the denial of a Rule 60(b) motion filed after arbitration proceedings occurred between the initial judgment and the post-judgment motion). That makes sense

24-10901              Opinion of the Court              11

because there often isn't an opportunity to challenge the order in the first appeal. That's especially true in a case like this one, where the court entered the order *after* we resolved the first appeal.

The City of Marathon notes we have said that a motion for reconsideration of the Rule 4(a)(4)(A) motions "d[oes] not toll the time for filing [a] notice of appeal." *Ruiz v. Wing*, 991 F.3d 1130, 1138 n.4 (11th Cir. 2021) (citing *Wright v. Preferred Rsch., Inc.*, 891 F.2d 886, 889 (11th Cir. 1990) (per curiam)). That's so because "the language and purpose of Rule 4(a)(4) indicate that the time for appeal is postponed only by an *original* motion of the type specified." *Id.* (quoting *Wright*, 891 F.2d at 889).

But this precedent on Rule 4(a)(4)(A) does not come into play here. Plaintiffs appeal only the resolution of their motion to reopen their case. They don't seek to toll the period to appeal the 2018 dismissal of their claim. Nor could they—even considering their original reopening motion to be a Rule 60(b) motion for relief, *see Waetzig*, 145 S. Ct. at 693 (reviewing a motion to reopen a dismissal without prejudice as a Rule 60(b) motion), it would have to have been filed within 28 days of the dismissal to toll the period to appeal. *See* FED. R. APP. P. 4(a)(4)(A)(vi) (requiring a Rule 60 motion to have been filed within the time to file a Rule 59 motion to toll the period to appeal); FED. R. CIV. P. 59 (giving 28 days post-judgment to file a Rule 59 motion). We are dealing with a subsequent post-judgment appeal, not the first appeal of the judgment.

In sum, the reconsideration motion altered the time to appeal the denial of the motion to reopen. It did so because it

12                    Opinion of the Court                    24-10901

rendered that denial nonfinal.  *See Nutraceutical Corp.*, 586 U.S. at 197.  But neither motion did anything to toll the period to appeal any other order in the case.  *See* FED. R. APP. P. 4(a)(4)(A).

For these reasons, Plaintiffs' appeal is timely because Plaintiffs filed their notice of appeal within 30 days of the district court's denial of their motion for reconsideration.

### B.  Plaintiffs are precluded from pursuing their takings claim in federal court.

Having concluded that we have jurisdiction over this appeal, we move now to the merits of the dispute.  Plaintiffs appeal the denial of their motion to reopen the case and amend their complaint.

A motion to reopen a dismissal without prejudice is a Rule 60(b) motion.[3]  *See, e.g.*, *Waetzig*, 145 S. Ct. at 693.  Rule 60(b) permits a federal court, "[o]n motion and just terms," to "relieve a party . . . from a final judgment, order, or proceeding . . . ."  One such final judgment or proceeding is a dismissal without prejudice. *See Waetzig*, 145 S. Ct. at 693.  And a court may grant this relief for one of six enumerated reasons, two of which are relevant here.

---

[3] We are not certain what kind of motion Plaintiffs are referring to by a "cleanup" motion.  But no matter what the "movant so labels it . . . . the court must determine independently what type of motion was before the district court, depending upon the type of relief requested." *Wright*, 891 F.2d at 889.  And a motion to reopen a case after more than 28 days is treated as a Rule 60(b) motion. *See, e.g.*, *Waetzig*, 145 S. Ct. at 693.

First, Rule 60(b)(5) allows relief when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." *See* FED. R. CIV. P. 60(b)(5). And second, Rule 60(b)(6) provides for relief for "any other reason that justifies relief." *See id.* (6). Rule 60(b)(6) is "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (citation omitted). But it is "an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Id.* Plus, relief under Rule 60(b) must be sought "within a reasonable time." FED. R. CIV. P. 60(c)(1).

We don't think that the district court abused its discretion here. 28 U.S.C. § 1738, the full-faith-and-credit statute, provides that "parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction," most relevantly state courts. *See San Remo*, 545 U.S. at 336. In *San Remo*, the Supreme Court held that that statute precludes plaintiffs from relitigating in federal courts their takings claims that state courts have already resolved. *See id.* at 347–48. So looming large over Plaintiffs' attempt to reopen their case is the fact that were it to be reopened, it would have to be quickly dismissed. And that fact ultimately proves fatal to their attempt to invoke Rule 60(b).

We start with Rule 60(b)(5). True, as a formal matter, the dismissal without prejudice *was* "based on an earlier judgment that has been reversed": *Williamson County*. *See Knick*, 588 U.S. at 185,

206. But even if we were to think relief under Rule 60(b)(5) was warranted, we can't say the district court abused its discretion in finding that Plaintiffs failed to file their motion to reopen their case "within a reasonable time." *Knick* overruled *Williamson County* in June 2019, when no state court had yet ruled on Plaintiffs' takings claim. No state court would until March 2022. Yet Plaintiffs waited until *four years after Knick*, having fully exhausted their state remedies, to file in federal court. Because Plaintiffs fully exhausted their state remedies, *San Remo* requires dismissal of any attempted reopening of a federal case. So by pursuing a judgment in the state-court system, Plaintiffs effectively forfeited their federal claim. And the district court did not abuse its discretion by concluding that their Rule 60(b) motion was not timely.

Because relief, in theory at one point, could have been sought under Rule 60(b)(5), our precedent forecloses relief under Rule 60(b)(6). *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275 n.4 (11th Cir. 2008) ("Rule 60(b)(6) applies only to cases that do not fall into any of the other categories listed in parts (1)–(5) of Rule 60(b)." (internal quotation marks and citation omitted)) But even if Plaintiffs could seek Rule 60(b)(6) relief, we don't think a district court could properly grant it here. As we explained, relief under Rule 60(b)(6) is only appropriate in "exceptional circumstances." And that high bar can't be met when Plaintiffs' claim must be swiftly thrown out under *San Remo*.

To get around *San Remo*, Plaintiffs suggest that *Knick* casts doubt on the decision. But that is a misreading. The opinion held

that "the state-litigation requirement [of *Williamson County*] rests on a mistaken view of the Fifth Amendment"; it said nothing to undermine *San Remo*. *Knick*, 588 U.S. at 185. When faced with a perceived conflict between *Williamson County* and *San Remo*, the Court chose to preserve *San Remo*.[4] So *San Remo* remains binding precedent.

Plaintiffs also contend that we are bound to let them reopen their case under the law-of-the-case doctrine. "Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case." *Alphamed Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280, 1285–86 (11th Cir. 2004). But that doctrine does not support Plaintiffs' position. "The law of the case doctrine . . . bars consideration of only those legal issues that were actually, or by necessary implication, decided in the former proceeding." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000) (cleaned up and citation omitted). And in our first decision in this case, we only summarized the holding of *Williamson County* and explained it required Plaintiffs to exhaust their state-court remedies before seeking federal relief. *Warner*, 718 F. App'x at 838. We did not comment or decide how *San Remo* would affect any attempt by Plaintiffs to reopen their case after a final state court judgment. *See generally id.*

---

[4] Plaintiffs also urge that *Trump v. Anderson*, 601 U.S. 100 (2024), casts doubt on *San Remo*. Because *Anderson* concerns the interpretation of Section 3 of the Fourteenth Amendment, we fail to see its relevance here in a takings action. *See id.*

Finally, we cannot grant Plaintiffs relief based on their arguments that Florida lacked an adequate remedy to adjudicate their takings claim for two reasons.  First, *San Remo* unambiguously holds that if a state court adjudicates the takings claim, we are bound under 28 U.S.C. § 1738 to respect that judgment.  *See San Remo*, 545 U.S. at 347–48.  There is no room to assess the adequacy of the relief available in state courts.  But second, even if we could make that assessment, we are bound by the law-of-the-case doctrine to find Florida's remedy adequate.  That's because *Williamson County* allowed a federal takings action only if "there is no adequate state remedy to obtain just compensation, or an adequate remedy exists but the plaintiff has been denied relief."  *Warner*, 718 F. App'x at 838.  So we explained that Plaintiffs "did not allege in their complaint that Florida fails to provide an adequate procedure to obtain just compensation—nor could they.  Florida *does* provide an adequate procedure to obtain monetary relief through an inverse condemnation claim."  *Id*.  We necessarily decided that Florida had an adequate procedure for inverse-condemnation actions because had it not had one, Plaintiffs could have pursued their claim directly in federal court.[5]  *See id*.

---

[5] Still, Plaintiffs insist that Florida's inverse condemnation procedure is inadequate, in part, because there is no right to a jury for these claims under Florida law.  They stress that the Seventh Amendment demands that certain factual issues central to takings claims be submitted to a jury.  And they note the Court recently zealously guarded the Seventh Amendment right in *SEC v. Jarkesy*, 603 U.S. 109 (2024).  It's true that the Seventh Amendment requires certain factual issues for takings claims *brought in federal court* under 42 U.S.C.

At bottom, *San Remo* bars Plaintiffs' federal claim since they waited to reopen their case until after they received a state-court judgment. So the district court did not abuse its discretion in denying Plaintiffs Rule 60(b) relief. And because the case remained closed, the district court did not abuse its discretion in denying Plaintiffs' motion to amend their complaint.

## IV.    CONCLUSION

For the above reasons, we affirm the denial of Plaintiffs' motion to reopen their case and amend their complaint.

**AFFIRMED.**

---

§ 1983 to be adjudicated by a jury. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720–21 (1999). But the Seventh Amendment has never been extended to apply to claims brought in state court. *See id.* at 719 ("It is settled law that the Seventh Amendment does not apply" in "suits decided by state courts," including takings claims). So a state's procedure for resolving inverse condemnation claims isn't inadequate because it does not provide for a right to a jury.